2025 IL App (4th) 241609-U

NOS. 4-24-1609, 4-24-1610, 4-24-1611, 4-24-1612 cons.

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 11, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Del. D., Ds. D., Da. D., and Den. D., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Peoria County |
| Petitioner-Appellee, | ) | Nos. 21JA278 |
| v. | ) | 21JA279 |
| Denzelle D., | ) | 21JA280 |
| Respondent-Appellant). | ) | 21JA281 |
| | ) | |
| | ) | Honorable |
| | ) | Vincent E. Cail, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Zenoff and Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court granted appellate counsel's motion to withdraw and affirmed
              the trial court's judgment, finding no issue of arguable merit could be raised on
              appeal.

¶ 2         In June 2024, the State filed petitions to terminate the parental rights of

respondent father, Denzelle D., to his minor children, Del. D. (born in March 2021), Ds. D. (born

in July 2019), Da. D. (born in September 2017), and Den. D. (born in July 2016). Following

hearings on the State's petitions, the trial court found Denzelle to be an unfit parent under section

1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)) and determined it was in the minors'

best interests to terminate his parental rights.

¶ 3 In February 2025, appellate counsel moved to withdraw as counsel in these consolidated cases and filed an accompanying memorandum, arguing no meritorious issues could be raised on appeal. For the following reasons, we grant the motion to withdraw and affirm the trial court's judgment.

¶ 4 I. BACKGROUND

¶ 5 A. Initial Proceedings

¶ 6 In July 2021, the State filed petitions alleging Del. D., Ds. D., Da. D., and Den. D. were neglected minors whose environment was injurious to their welfare under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Act) (705 ILCS 405/2-3(1)(b) (West 2020)). Specifically, the State's petitions alleged that on June 4, 2021, Shakaya J., the minors' mother, told Peoria police officers that a man, whom she had met at Walmart and brought home, "stole money and a television from her while she was sleeping." Shakaya did not know the man's name. Shakaya was intoxicated while speaking with police, and officers observed "open alcohol containers throughout the residence." Shakaya also scolded the minors "for not waking her up when the man was stealing her television."

¶ 7 The petitions further alleged Del. D. was a "substance-exposed infant to cocaine" at the time of his birth, and he was admitted to the "NICU for 2 days due to 'jitteriness' " after being born prematurely. Shakaya, however, "canceled or failed to appear" for at least 12 of Del. D.'s follow-up appointments. She also tested positive for alcohol and cocaine on two separate occasions.

¶ 8 In addition, the petitions alleged that on July 24, 2021, Shakaya told police that she and her current paramour "got into a physical altercation in which [Shakaya] kicked out [her] paramour's] front passenger side windshield after [he] struck her on the face with a bottle."

Officers observed "that both [Shakaya] and [her paramour] were intoxicated" at the time Shakaya reported the incident. The petitions noted Shakaya's paramour had numerous felony and misdemeanor convictions.

¶ 9        Shakaya stipulated to the allegations in the State's petitions in September 2021, and we note she is not a party to this consolidated appeal. In December 2021, based upon a stipulation by Denzelle, the trial court entered an adjudicatory order, finding the minors neglected. The court then entered a dispositional order three months later, finding Denzelle unable, for reasons other than financial circumstances alone, to care for, protect, train, or discipline the minors because of an "outstanding Missouri warrant" and inadequate living arrangements for the children. The court adjudged the minors neglected, made them wards of the court, and placed custody and guardianship with the Illinois Department of Children and Family Services (DCFS).

¶ 10                        B. Termination Proceedings

¶ 11        In June 2024, the State filed petitions to terminate Denzelle's parental rights. The petitions alleged Denzelle was an unfit parent within the meaning of section 1(D)(m)(ii) of the Adoption Act because he failed to make reasonable progress toward the return of the minors within the following nine-month period: September 10, 2023, to June 10, 2024 (750 ILCS 50/1(D)(m)(ii) (West 2022)).

¶ 12                        1. *Unfitness Hearing*

¶ 13        Denzelle failed to appear for the November 2024 unfitness hearing. Matthew Cole, a caseworker for DCFS, outlined the services contained in Denzelle's service plan related to substance abuse and domestic violence assessments, cooperation with the agency, and visitation. According to Cole, Denzelle failed to comply with any recommended services during

the relevant nine-month period. Denzelle failed to visit the children consistently and failed to engage in domestic violence services. He also failed to complete a substance abuse assessment. Denzelle's service plan required him to submit to drug screenings four times each month. However, he appeared for only 12 and tested positive for cocaine at all of them.

¶ 14　　　Ultimately, the trial court found Denzelle unfit, noting the State "demonstrate[d] by clear and convincing evidence that Denzelle *** failed to make reasonable progress toward the return of his four children to his care during the nine-month period of time."

¶ 15　　　　　　　　　　　2. *Best-Interests Hearing*

¶ 16　　　The matter then immediately proceeded to the best-interests hearing. The best-interests report indicated that Da. D. and Den. D. had been placed with their current foster family since May 2022. Both children appeared bonded to their foster family, and they relied on their foster parents for support and nurturing. The minors' foster parents provided for their basic needs of food, shelter, clothing, and safety. They ensured the minors' medical, mental, and emotional needs were met. Additionally, the children were building strong bonds within their foster family's community as they were "involved in many activities outside of school," had strong attachments to their foster grandparents, and enjoyed spending time with their foster cousins. The minors' foster parents expressed their desire to adopt Da. D. and Den. D.

¶ 17　　　Regarding Ds. D. and Del. D., the best-interests report indicated the children had been placed with their current foster family since July 2021. Both children appeared happy and bonded to their foster family. The minors' foster parents provided for their basic needs of food, shelter, clothing, and safety. They ensured the minors' medical, mental, and emotional needs were met. The children also attended preschool regularly and were building strong bonds within their foster family's community and church. The minors' foster parents expressed their desire to

adopt Ds. D. and Del. D.

¶ 18　　　　　Ultimately, in "looking at the statutory best interest factors," the trial court found it was in the best interests of the children to terminate Denzelle's parental rights.

¶ 19　　　　　This appeal followed. In February 2025, appointed counsel for Denzelle on appeal filed a motion for leave to withdraw as Denzelle's counsel and attached a supporting memorandum of law, citing *Anders v. California*, 386 U.S. 738 (1967), and *People v. Jones*, 38 Ill. 2d 384 (1967). This court granted Denzelle leave to file additional points and authorities on or before March 3, 2025. None have been filed.

¶ 20　　　　　　　　　　　　　II. ANALYSIS

¶ 21　　　　　　　　　　　　A. *Anders* Motions

¶ 22　　　　　The *Anders* procedure pertaining to an appellate counsel's motion to withdraw applies to findings of parental unfitness and termination of parental rights. Under *Anders*, a brief must accompany counsel's motion to withdraw, outlining any issues in the record which might arguably support the appeal, explaining why counsel finds those issues frivolous, and concluding that the case presents no viable grounds for appeal. *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000). The appellate court will then review the record to determine whether the available arguments are wholly without merit. *People v. Meeks*, 2016 IL App (2d) 140509, ¶ 10.

¶ 23　　　　　On appeal, Denzelle's appointed counsel examined whether the trial court's unfitness findings and best-interests determinations were against the manifest weight of the evidence and concluded any such claims would be frivolous. After reviewing the record and the applicable law, we agree.

¶ 24　　　　　　　　　　　　B. Unfitness Finding

¶ 25　　　　　" 'The State must prove parental unfitness by clear and convincing evidence.' "

*In re A.L.*, 409 Ill. App. 3d 492, 500 (2011) (quoting *In re Jordan V.*, 347 Ill. App. 3d 1057, 1067 (2004)). A determination of parental unfitness involves factual findings and credibility determinations which the trial court is in the best position to make because its "opportunity to view and evaluate the parties *** is superior." (Internal quotation marks omitted.) *In re M.I.*, 2016 IL 120232, ¶ 21. "A trial court's finding of parental unfitness will not be reversed unless it is against the manifest weight of the evidence." *In re Ta T.*, 2021 IL App (4th) 200658, ¶ 48. "A trial court's decision is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." (Internal quotation marks omitted.) *In re N.B.*, 2019 IL App (2d) 180797, ¶ 30.

¶ 26        The Adoption Act provides several grounds on which a trial court may find a parent unfit. "[S]ufficient evidence of one statutory ground *** [is] enough to support a [court's] finding that someone [is] an unfit person." (Internal quotation marks omitted.) *In re F.P.*, 2014 IL App (4th) 140360, ¶ 83. Based on a careful review of the record, we agree with appellate counsel that there is no issue of arguable merit concerning the trial court's unfitness finding. The State alleged, and the court found, Denzelle was unfit because he failed to make reasonable progress toward the minors' return home within the nine-month period of September 10, 2023, to June 10, 2024.

¶ 27        During that time, Denzelle failed to comply with any recommended services. He failed to visit the children consistently and failed to engage in domestic violence services. He also failed to appear for 24 drug screenings, even though his service plan required him to cooperate with substance abuse services and submit to drug screenings four times each month. When he managed to show up for his drug screenings, he tested positive for cocaine. He did not even bother to appear at the termination proceedings.

¶ 28    Since the evidence confirms Denzelle failed to make any progress, much less reasonable progress, during the relevant nine-month period, we cannot say the trial court's unfitness finding stands against the manifest weight of the evidence because the opposite finding (*i.e.*, fitness) is not readily apparent. See *N.B.*, 2019 IL App (2d) 180797, ¶ 30.

¶ 29                          C. Best-Interests Finding

¶ 30    After a parent is found unfit, "the focus shifts to the child." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). The issue ceases to be "whether parental rights can be terminated" and becomes "whether, in light of the child's needs, parental rights should be terminated." (Emphases omitted.) *D.T.*, 212 Ill. 2d at 364. The trial court must consider the factors set forth in section 1-3(4.05) of the Juvenile Act (705 ILCS 405/1-3(4.05) (West 2022)). See *In re T.A.*, 359 Ill. App. 3d 953, 959-60 (2005). Those factors include: the child's physical safety and welfare; the development of the child's identity; the child's familial, cultural, and religious background and ties; the child's sense of attachments, including where the child feels loved, attached, and valued; the child's sense of security, familiarity, and continuity of affection; the child's wishes and long-term goals; the child's community ties; the child's need for permanence; and the uniqueness of every family and each child. 705 ILCS 405/1-3(4.05) (West 2022). We will not overturn a court's best-interests finding unless it is against the manifest weight of the evidence. *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009).

¶ 31    Here, the evidence shows the best-interests factors support the termination of Denzelle's parental rights. The children appeared to be thriving in their respective foster placements. Da. D. and Den. D. appeared bonded to their foster family, and they looked to their foster parents for support and nurturing. The children's foster parents provided for their basic needs of food, shelter, clothing, and safety. They also ensured the minors' medical, mental, and

emotional needs were met. Additionally, Da. D. and Den. D. were building strong bonds within their foster family's community, as they were "involved in many activities outside of school," had strong attachments to their foster grandparents, and enjoyed spending time with their foster cousins. The minors' foster parents expressed their desire to adopt Da. D. and Den. D.

¶ 32　　Ds. D. and Del. D. appeared happy and bonded to their foster family as well. The minors' foster parents provided for their basic needs of food, shelter, clothing, and safety. They ensured the minors' medical, mental, and emotional needs were met. Ds. D. and Del. D. attended preschool regularly and were building strong bonds within their foster family's community and church. The minors' foster parents expressed their desire to adopt Ds. D. and Del. D.

¶ 33　　All told, the record shows the children feel loved, valued, secure, and nurtured in their current placements and have structure and continuity, and it supports the trial court's decision. Thus, we cannot say the court erred in finding it was in the children's best interests to terminate Denzelle's parental rights. When weighed against a legitimate concern for permanency for children of tender years, the court's finding termination was in the minors' best interests is not against the manifest weight of the evidence. See *T.A.*, 359 Ill. App. 3d at 960-61.

¶ 34　　　　　　　　　　　　III. CONCLUSION

¶ 35　　For the reasons stated, we grant the motion to withdraw as counsel on appeal and affirm the trial court's judgment.

¶ 36　　Affirmed.