2022 IL App (2d) 210236
No. 2-21-0236
Opinion filed March 21, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-2791 |
| JAMES A. JEFFERS, | ) ) | Honorable Donna R. Honzel, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Hutchinson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, James A. Jeffers, appeals his 10-year sentence for aggravated driving under the

influence (DUI) involving death (625 ILCS 5/11-501(a)(2), (d)(1)(F) (West 2014)) and aggravated

DUI involving great bodily harm (*id.* § 11-501(a)(2), (d)(1)(C)). He contends that the trial court

improperly considered a factor inherent in the offenses when it considered in aggravation that

defendant's conduct caused or threatened serious harm. We affirm because the record shows that

the trial court considered (1) the degree of harm inflicted on the victims and (2) the threat of harm

to persons other than the victims—both of which were proper aggravating factors.

¶ 2                                    I. BACKGROUND

¶ 3      The State indicted defendant on multiple counts of aggravated DUI in connection with a motor vehicle collision that resulted in the death of Alex Banks and severe injuries to Tanisha Gates. In October 2018, he pleaded guilty to two counts of aggravated DUI, and the State dismissed the remaining charges. There was no agreement as to sentencing.

¶ 4      The factual basis for the plea was as follows. On December 4, 2015, officers dispatched to the Whitman Street Bridge in Rockford observed a Chevy Malibu with major damage to the vehicle's driver's side and a Nissan Xterra with serious front-end damage. The wreckage pinned Gates in the Malibu's front passenger seat. She suffered a brain bleed and fractures of her hip, foot, and rib. Banks, the driver of the Malibu, was deceased. He suffered multiple fractures, including a fractured skull and pelvis, and had lacerations to the ventricles of his heart. His cause of death was blunt force trauma to the head and chest due to the collision. Defendant was the driver of the Xterra. He exhibited a strong smell of alcohol at the scene. A blood draw at the hospital showed a blood-alcohol level of 0.259. The state crime lab also tested his blood, which showed a blood-alcohol level of 0.195. A drug screen tested positive for tetrahydrocannabinol.

¶ 5      The record includes uncontroverted statements that defendant was driving the wrong way on the bridge at the time of the collision.

¶ 6      Evidence at sentencing showed that defendant had custody of his eight-year-old son, who had attention deficit hyperactivity disorder, autism, and behavioral issues. He attended a special school. The son's mother had parenting time and was seeking custody. Defendant reported that the mother was an alcoholic who had been incarcerated for drug offenses and that her husband had prior armed-robbery and possession-of-heroin charges. However, a guardian *ad litem* had

determined that no restriction of the mother's parenting time was appropriate and that she and her husband had successfully completed substance abuse treatment.

¶ 7    The presentence investigation report showed that defendant had a history of traffic violations and had received a sentence of supervision for possession of cannabis. Defendant reported that he drank alcohol to help cope with his emotions but claimed that his alcohol use on the day of the collision was abnormally high. His employment history was generally good.

¶ 8    Gates's sister submitted a victim impact statement. She said that Gates was a single parent with four children. She was attending college before the accident. She spent two weeks in a coma because of the brain bleed that she suffered in the accident. She woke up unable to recognize anyone and "had to learn everything all over again." She continues to have anger issues from the brain injury. Her sister "gave up [her] life and goals" to become her caregiver.

¶ 9    Banks's grandmother, mother, and father described the impact of his death on their family and Banks's two children. Banks's father said that he would pray for defendant but implied that defendant should not "get slapped on the wrist" for his actions.

¶ 10    Defendant testified about his injuries in the accident, expressed remorse, and apologized to the victims' families. He had not consumed alcohol since the accident and had successfully used an alcohol monitoring device for two years. While on bond, he successfully completed drug and alcohol treatment. He said that he would like to attend Alcoholics Anonymous.

¶ 11    The State asked for a 14-year sentence. Addressing the factors in aggravation, the State noted that, under section 5-5-3.2(a)(1) of the Unified Code of Corrections (Code) (hereinafter subsection (a)(1)) (730 ILCS 5/5-5-3.2(a)(1) (West 2014)), defendant's conduct caused and threatened serious harm: "There can be no doubt about that factor. Not even the people he hurt,

but he did put everyone, everyone in the area at risk from when he left where he was drinking to where he stopped at that collision." Defendant did not object to these remarks.

¶ 12     The trial court noted multiple factors in mitigation, including defendant's "deep and sincere remorse." Then, addressing the factors in aggravation, the court referenced subsection (a)(1), noting that "it goes without saying that [defendant's conduct] threatened or caused serious harm; very clear." Defendant did not object to the remark.

¶ 13     The court noted the circumstances of the offense:

"I have considered the factual basis and the factual basis, the facts of this case, you know, drivers have—there's case law that says that a driver has a presumption to assume that the other drivers around them are going to follow the traffic laws and the traffic rules and particularly when we have a bridge that's a one way—one set with a pretty significant median and one way or the other, no one expects a car to be driving in the wrong lanes going the wrong way on a bridge of all places where there's no ability to escape particularly terrible facts and all of those are taken into consideration including the nature of the injuries which indicate significant impact. Significant impacts rarely happen with low speed. I'm not making any specific findings in terms of what your speed was, but obviously, the extent of the report of injuries, the coroner's report, all of those indicate that this was a, a high force impact as well as the kind of trauma you, yourself, suffered. Those things are all considered."

¶ 14     The trial court sentenced defendant to concurrent terms of 5 and 10 years' incarceration.

¶ 15     Defendant moved to reconsider the sentence. He argued, among other things, that the trial court erred in considering in aggravation that his conduct caused or threatened serious harm,

because that factor was inherent in the offenses. In addition, defendant specifically challenged the State's assertion that he "put *** everyone in the area at risk" from his conduct.

¶ 16    At the motion hearing, defendant argued that the infliction of death or great bodily harm was already factored into the offenses and should not have been considered in aggravation. The State responded that the trial court could properly consider that defendant put the general public at risk, aside from the harm he inflicted on the victims.

¶ 17    The trial court acknowledged that the legislature set the sentencing parameters for the offenses based on death or great bodily harm to the victims. The court noted, however, that defendant was unable to cite any comment by the court suggesting that it "considered the death of Alex Banks and the serious and great bodily harm of Tanisha Gates as aggravating factors." The court paraphrased with approval the State's comment at sentencing that defendant "put everyone, everyone in the area at risk from when he left, to where he was drinking to where he stopped at collision." The court then commented:

> "In so arguing, the State verbalized what every person understands or should understand, that getting behind the wheel of a car intoxicated puts everyone at risk and threatens harm even if it is not caused. Defense counsel has been in front of this Court countless times and heard the Court admonished their DUI clients as well as depending upon the circumstances of others, even in cases where no one has been injured of the harm their conduct threatens. *** [A]ny time any individual gets behind the [wheel] while intoxicated, they put the general public at risk and threatens [*sic*] them [with] harm."

¶ 18    The court reiterated that it "never expressed that the death of Alex Banks was an aggravating factor." "Not only did the Court not express it, the Court never used that fact as an aggravating factor." The court added:

"The [subsection (a)(1)] aggravating factor is stated in the disjunctive, threatened or caused and is perfectly appropriate to consider all those who were threatened by defendant's action even though they were not actually injured and were not subject to the proceeding. So not a named victim, but threat to the general public. In doing so that is not a double enhancement."

The court denied defendant's motion to reconsider.

¶ 19   Defendant appealed. We granted his motion for a summary remand because defense counsel had filed a deficient certificate under Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). On remand, defendant filed an amended motion to reconsider the sentence, raising the same issues. The trial court denied the motion for the same reasons as the prior denial. Defendant appeals.

¶ 20                                II. ANALYSIS

¶ 21   Defendant contends that the trial court erred when it considered in aggravation that his conduct caused or threatened serious harm. Defendant argues that the death of Banks and the harm to Gates were already factored into the aggravated DUI offenses and that there was no proof that the harm or threat of harm exceeded what was inherent in the offenses.

¶ 22   The State's initial response is to argue forfeiture. The State correctly notes, "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). However, the State does not argue total forfeiture of defendant's challenge to the trial court's reliance on subsection (a)(1)—as the State might have done because defendant altogether failed to object when the court invoked subsection (a)(1) at sentencing. Rather, the State argues that defendant failed to advance below, and thus forfeited for appeal, any argument that the trial

court improperly considered in aggravation the threat that defendant's conduct posed to the general public. We disagree that defendant forfeited this challenge. First, in his motion to reconsider the sentence, defendant specifically challenged the State's remark that defendant "put *** everyone in the area at risk" from his conduct. Moreover, at the hearing on the motion to reconsider, the court fully addressed whether it was proper under subsection (a)(1) for the court to consider in aggravation that defendant's conduct endangered the general public. Since the issue was developed and addressed below, we reject the claim of forfeiture. See *People v. Clifton*, 2019 IL App (1st) 151967, ¶ 58; *People v. Daniel*, 2014 IL App (1st) 121171, ¶ 14.

¶ 23     As to the merits, section 5-5-3.2(a) of the Code lists the factors to consider in aggravation at sentencing. 730 ILCS 5/5-5-3.2(a) (West 2014). The first factor listed—in subsection (a)(1)— is that "the defendant's conduct caused or threatened serious harm." *Id.* § 5-5-3.2(a)(1). "Generally, a trial court may not consider as an aggravating factor in sentencing a fact that is inherent in the offense with which the defendant was charged." *People v. Sanders*, 2016 IL App (3d) 130511, ¶ 13. Whether an aggravating factor is inherent in the offense is a question of statutory construction that we review *de novo*. *People v. Phelps*, 211 Ill. 2d 1, 12 (2004).

¶ 24     "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22 (citing *People v. Dowding*, 388 Ill. App. 3d 936, 942-43 (2009)). A court is not required to refrain from mentioning factors that constitute elements of the offense. *People v. Sherman*, 2020 IL App (1st) 172162, ¶ 52. The burden is on the defendant to establish that the trial court improperly considered a factor inherent in the sentence in aggravation. *Dowding*, 388 Ill. App. 3d at 943.

¶ 25    While a trial court may not consider a factor inherent in the offense in aggravation, it is appropriate to consider the degree and gravity of the defendant's conduct. See *People v. Saldivar*, 113 Ill. 2d 256, 271-72 (1986).

> "The trial court may consider as an aggravating factor 'the *manner* in which the victim's death was brought about, as well as the *seriousness, nature*, and *circumstances* of the offense ***. However, the trial court may *not* consider the end result—*i.e.*, the victim's death—as a factor in aggravation where death is implicit in the offense.' " (Emphases in original.) *People v. Turner*, 2018 IL App (1st) 170204, ¶ 88 (quoting *Dowding*, 388 Ill. App. 3d at 943-44).

¶ 26    Thus, while the trial court here could not properly focus on the result of defendant's conduct—the death of Banks and the great bodily harm to Gates—it could consider the *degree* of harm, emotional or physical, caused by that conduct. See *id.*; *People v. Rennie*, 2014 IL App (3d) 130014, ¶ 32.

¶ 27    Likewise, it was appropriate for the trial court to consider in aggravation the threat of harm to the general public. See *Turner*, 2018 IL App (1st) 170204, ¶ 89 (in sentencing the defendant for aggravated DUI that caused death and injury, the trial court properly considered the threat to potential victims not involved in the crash). Subsection (a)(1) provides simply that the trial court may impose a more severe sentence where "the defendant's conduct caused or threatened serious harm." 730 ILCS 5/5-5-3.2(a)(1) (West 2014). It does not specify that the trial court must consider only the threats and harm suffered by the named victim of the offense. Further, it is telling that subsection (a)(1) refers broadly to "conduct," rather than purely to a defendant's "offense." The language appears to mandate a broader look at a defendant's behavior. In contrast, many other statutory aggravating factors refer only to the specific "offense" or "crime" committed. *Id.* § 5-5-

3.2(a)(2)-(a)(28). Finally, it is well settled that uncharged conduct is relevant at sentencing. See, *e.g.*, *People v. Flores*, 153 Ill. 2d 264, 296 (1992); see also *People v. Solano*, 221 Ill. App. 3d 272, 272-74 (1991) (it was proper for the trial court to consider in aggravation the serious harm suffered by a surviving passenger who was not the victim).

¶ 28    Here, defendant fails to show that the trial court considered a factor inherent in the offenses when it weighed the harm caused or threatened by defendant's conduct. At the hearing on the motion to reconsider, the trial court noted that defendant was unable to identify where, at sentencing, it suggested that Banks's death or the great bodily harm to Gates were proper aggravating factors. The court thus implicitly acknowledged that it would have erred had it considered the death or injury in aggravation (moreover, the court expressly stated that it *did not* consider Banks's death in aggravation). We presume that the trial court followed the law on proper sentencing factors; moreover, the record does not overcome that presumption but affirmatively demonstrates that the trial court acted properly. See *People v. Jordan*, 218 Ill. 2d 255, 269 (2006).

¶ 29    First, the court appropriately considered at sentencing that the victims' injuries indicated a high-impact collision, as this bore upon the particular severity of defendant's conduct. See *Saldivar*, 113 Ill. 2d at 271-72. Also, the court properly considered the detrimental effects on the victims' families. See *People v. Kelley*, 2019 IL App (4th) 160598, ¶ 117 (although death may be inherent in an offense, the detrimental impact on the victim's family is not).

¶ 30    Second, at the hearing on the motion to reconsider, the court correctly recognized that a sentencing court may consider the threat to the general public and not just to the named victim. See *Turner*, 2018 IL App (1st) 170204, ¶ 89. Defendant argues that the court could not properly consider the danger to the general public, because driving while intoxicated is already punished as being inherently dangerous to others. However, the court could still consider *the severity* of the

threat of harm under the facts of the case. See *id.* (rejecting the same argument). To that end, the court appropriately noted the particular danger posed by defendant's conduct of driving the wrong way on a bridge with a substantial median, providing no means to evade his approach. This conduct threatened serious harm not just to the victims but also to the general public.

¶ 31 Finally, we note that defendant has filed a motion for leave to cite *People v. Larson*, 2022 IL App (3d) 190482, as additional authority. The State objects, arguing that *Larson* is irrelevant. We grant the motion but note that *Larson* does not change our analysis. In *Larson*, the defendant was charged with aggravated DUI based on the victim's death. The record there showed that the trial court improperly considered the victim's death in aggravation when sentencing. *Id.* ¶ 31. By contrast, the trial court here denied that it considered the mere facts of Banks's death or Gates's injuries as aggravating factors. Instead, it considered legitimate factors, such as the particularity severity of defendant's conduct, its threat to the general public, and its impact on the victims' families.

¶ 32                                    III. CONCLUSION

¶ 33 The trial court did not improperly consider in aggravation a factor inherent in the offenses. Accordingly, we affirm the judgment of the circuit court of Winnebago County.

¶ 34 Affirmed.

No. 2-21-0236

| | |
|---|---|
| **Cite as:** | *People v. Jeffers*, 2022 IL App (2d) 210236 |
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 15-CF-2791; the Hon. Donna R. Honzel, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, Christopher McCoy, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | J. Hanley, State's Attorney, of Rockford (Patrick Delfino, Edward R. Psenicka, and Max C. Boose, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

¶ 35